SIGNED THIS: October 30, 2015

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD R. BAUMAN, | ) | Case No. 12-81285 |
|                 Debtor. | ) | |
| | ) | |
| | ) | |
| A. CLAY COX, Trustee, | ) | |
|                 Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.: 14-08031 |
| | ) | |
| MIDSTATE ASPHALT REPAIR, INC.; | ) | |
| SCOTT HOSTETLER; MARY E. FAUPEL; | ) | |
| HEARTLAND BANK & TRUST COMPANY; | ) | |
| and DONALD BAUMAN, | ) | |
|                 Defendants. | ) | |

**O P I N I O N**

      A. Clay Cox, Trustee (TRUSTEE) of the estate of Ronald R. Bauman (DEBTOR), filed an amended complaint against the Defendants, Midstate Asphalt Repair, Inc., Scott Hostetler, Mary E. Faupel, Heartland Bank & Trust Company and Donald Bauman (MIDSTATE, HOSTETLER, FAUPEL or HEARTLAND, individually, or the DEFENDANTS, collectively). Before the Court are motions to dismiss filed by the DEFENDANTS.

# BACKGROUND

In his original complaint, the TRUSTEE sought to avoid and recover the transfers of $322,000, representing the fair market value of Midwest Asphalt Repair, Inc.'s (MIDWEST) tangible operating assets of $172,000 and goodwill of $150,000, as fraudulent conveyances, alleging that the DEBTOR commingled the assets of MIDWEST with his own, as well as with DONALD'S, that MIDWEST was the DEBTOR'S alter ego, and that the DEBTOR wrongfully depleted MIDWEST of its assets for his personal benefit. The TRUSTEE alleged that "the DEBTOR caused MIDWEST to transfer the tangible operating assets and goodwill of MIDWEST" to HOSTETLER, the former operations manager of MIDWEST, and MIDSTATE, a corporation formed by HOSTETLER, which engaged in the same business operations and utilized the same employees and the same facility. The TRUSTEE alleged causes of action against HEARTLAND, DONALD and FAUPEL for conspiracy and for aiding and abetting under Illinois law.

The DEFENDANTS moved to dismiss the complaint on the ground that the TRUSTEE had failed to state a claim for which relief could be granted, contending that the TRUSTEE failed to allege a transfer of an interest in property of the DEBTOR, a fundamental element of an avoidance of a fraudulent transfer action. The TRUSTEE, premising his complaint on the theory that MIDWEST was the DEBTOR'S alter ego and not a separate and distinct legal entity, alleged that the transfers by MIDWEST were *de facto* transfers by the DEBTOR. Upon review of this Court's ruling in *In re Duckworth*, 2012 WL 4434681 (Bankr.C.D.Ill. 2012), rejecting a similar argument that the separate existence of related entities alleged to be alter egos should be disregarded, he sought leave to file an amended complaint.[1]

---

[1] The preliminary hearing on the motions to dismiss the complaint was held on October 14, 2014, before the TRUSTEE had filed a written response to the motions. At that hearing, the TRUSTEE made an oral motion for leave to amend his complaint, which motion was granted, rendering the motions to dismiss moot.

The TRUSTEE filed an amended complaint asserting the same substantive causes of action and the same essential facts as the original complaint, changing only the underlying theory of the nature of the property interest in the transfers sought to be avoided.[2] Abandoning completely the "alter ego" theory on which the original complaint was predicated, the TRUSTEE alleges in the amended complaint that "the DEBTOR, instead of transferring his stock in MIDWEST, transferred his equitable and beneficial interest in the property of MIDWEST" to MIDSTATE and HOSTETLER, in furtherance of his fraudulent scheme to dissipate assets in anticipation of the property allocation in his divorce proceeding. The allegations of the amended complaint against DONALD, HEARTLAND and FAUPEL, for the conspiracy and aiding and abetting claims remain unchanged, restated from the original complaint.

The facts, as alleged in the amended complaint, may be briefly summarized as follows. The DEBTOR was the sole officer, director and shareholder of MIDWEST, an asphalt patching and repair business, incorporated in March, 1998. MIDWEST was a successful company, earning significant profits over the years.[3] The DEBTOR separated from his spouse, Diane, on January 1, 2009, and filed a dissolution of marriage proceeding on May 28, 2009.

Prior to that time, beginning in January, 2008, the DEBTOR developed a plan to dissipate his assets in order to reduce the property which would be allocated to Diane in the

---

[2] Count I of the amended complaint is brought against MIDSTATE and HOSTETLER, seeking to avoid the transfer of the value of the DEBTOR'S equitable and beneficial interest in the property of MIDWEST based on actual fraud pursuant to section 548(a)(1); Count II is brought against those same defendants pursuant to an actual fraud theory under the Illinois Uniform Fraudulent Transfer Act (UFTA), 740 ILCS 160/5(a)(1). Counts III and IV are brought against HEARTLAND on theories of conspiracy under Illinois law and section 544(b)(1), and aiding and abetting actual fraudulent transfers under state law pursuant to 740 ILCS 160/11. Counts V and VI, against FAUPEL and Counts VII and VIII, against DONALD, assert the same theories of liability.

[3] According to the amended complaint, MIDWEST'S cash basis net income was $548,593 for 2005; $278,527 for 2006; $453,952 for 2007; $242,506 for 2008 and $777,487 for 2009.

dissolution proceedings. As part of that scheme, the DEBTOR caused MIDWEST to pay him dividends in excess of the corporation's net income and made certain payments to DONALD for hauling rock and rent for the buildings and farmland, which had not been previously made.

In September, 2010, HOSTETLER, MIDWEST'S operations manager and a close personal friend of the DEBTOR, incorporated MIDSTATE before leaving his employment with MIDWEST in December, 2010. On March 1, 2011, the DEBTOR transferred his equitable and beneficial interest in MIDWEST'S property to HOSTETLER and MIDSTATE. MIDSTATE continued the same business operations as MIDWEST. MIDSTATE leased the same business facilities from DONALD, which MIDWEST had occupied; hired the principal employees who had worked at MIDWEST; and retained the same customers. FAUPEL represented both the DEBTOR and MIDWEST at various times. She also represented MIDSTATE and HOSTETLER in incorporating MIDSTATE and both DONALD and MIDSTATE in the leasing of the business premises.

In January, 2011, MIDWEST, having defaulted on a secured loan to HEARTLAND, agreed to surrender four semi-tractors to HEARTLAND. HEARTLAND agreed to sell the semi-tractors to MIDSTATE at a UCC Article 9 private sale, providing the financing for the purchase. Diane, as guarantor on the loan, contacted HEARTLAND, offering to purchase the trucks for a sum greater than that agreed to by MIDSTATE, but her offer, received after the agreement had been entered into with MIDSTATE, was not acted upon by HEARTLAND.

FAUPEL, HEARTLAND and DONALD, well aware of the DEBTOR'S marital problems, each played a part in DEBTOR'S scheme to defraud Diane. A judgment of dissolution was

4

finally entered by the state court on February 24, 2012. Under the dissolution decree, a money judgment was entered in favor of Diane and against the DEBTOR for $1,338,169.50. On May 24, 2012, the DEBTOR and MIDWEST filed Chapter 7 bankruptcy petitions.

HOSTETLER and MIDSTATE, HEARTLAND and DONALD each filed motions to dismiss the counts against them, contending, *inter alia*, that the amended complaint fails to allege sufficient facts to support a plausible cause of action for a fraudulent transfer under either federal or state law, based on the TRUSTEE'S failure to allege a transfer of an interest of the DEBTOR in property.[4] FAUPEL also filed a motion to dismiss the counts against her for failing to allege a cause of action for civil conspiracy and for aiding and abetting, as well as for failure to allege fraud with particularity. The TRUSTEE'S claims for conspiracy and aiding and abetting, as theories of accessory or secondary liability, are necessarily dependent on the existence of an avoidable transfer to MIDSTATE and HOSTETLER, and those claims will rise or fall depending upon the TRUSTEE'S allegations relating to the transfer of the DEBTOR'S equitable and beneficial interest in MIDWEST.[5] Absent sufficient allegations of an underlying claim for avoidability, there can be no stand-alone cause of action for conspiracy or aiding and abetting a fraudulent transfer. Only after making such a finding of sufficiency, would the

---

[4] Alternatively, HEARTLAND seeks summary judgment pursuant to Rule 12(d) and Local Rule 7.1(d)(1), attaching the affidavit of a bank officer. DONALD has also moved to dismiss Counts VII and VIII against him as barred by a settlement agreement entered into in Adv. No. 13-8033, a separate proceeding brought by the TRUSTEE against him.

[5] Some decisions have held that under Illinois law, conspiracy and aiding and abetting were not independent causes of action, but theories of liability. *See F.D.I.C. v. Parzygnat*, 2011 WL 3704731 (N.D.Ill. 2011); *Central States, Southeast and Southwest Areas Pension Fund v. Gopher News Co.*, 542 F.Supp.2d 823 (N.D.Ill. 2008). That appears to be the majority view. *See GATX Corp. v. Addington*, 879 F.Supp.2d 633 (E.D.Ky. 2012)(collecting cases).

Other courts have recognized that a cause of action exists under Illinois law for aider-abettor liability against non-transferees of a fraudulent conveyance. *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006); *FirstMerit Bank, N.A. v. Hosseini*, 2015 WL 4243484 (N.D.Ill. 2015); *In re Restaurant Development Group, Inc.*, 397 B.R. 891 (Bankr.N.D. Ill. 2008)(relying on section 11 of the Illinois Uniform Fraudulent Transfer Act (740 Ill. Comp. Stat. 160/11), which provides that "[u]nless displaced by the provisions of this Act, the principles of law and equity . . . supplement its provisions").

5

Court reach the adequacy of the allegations involving claims against the other defendants. The Court will pass over those claims at the present time, to address the threshold issue of whether the amended complaint fails to allege a transfer of an interest in the property of the DEBTOR.[6]

## ANALYSIS

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under this provision, a court must construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and drawing all reasonable inferences in the favor of the nonmovant. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint need not contain detailed evidentiary allegations, but the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must offer some legal basis to support his cause of action. *Stransky v. Cummins Engine Co., Inc.*, 51 F.3d 1329 (7th Cir. 1995). Legal assertions or recital of the elements of a cause of action which are supported by mere conclusory statements, need not be accepted as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). Complaints that allege fraud, however, must meet the higher standard of pleading fraud with particularity. Fed. R. Civ. P. 9(b). The requirement that fraud be pleaded with particularity

---

[6] It is unnecessary to the Court's decision to address the other arguments raised by DONALD, HEARTLAND and FAUPEL, regarding the sufficiency of the allegations with respect to the conspiracy and aiding and abetting claims.

means the complaint must provide "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In the amended complaint, the TRUSTEE describes the collapse of MIDWEST, wholly owned by the DEBTOR, that occurred over the period of time from 2008 through 2011. He alleges that the DEBTOR engineered its demise solely so that Diane would not receive any of its value, and that the DEFENDANTS were all in cahoots with him on the scheme to defraud Diane. The TRUSTEE admits that the DEBTOR made no transfer of his stock in MIDWEST, but that he nevertheless "transferred his equitable and beneficial interest in the property of MIDWEST" to MIDSTATE and HOSTETLER on or about March 1, 2011.[7] The amended complaint fails to specify what happened on or about March 1, 2011, and fails to describe how the "transfer" of such interest was effectuated. The only transfer of specific assets of MIDWEST described in the amended complaint is the sale of four semi-tractors in February, 2011, to MIDSTATE for $150,000 at a UCC foreclosure sale conducted by HEARTLAND as the lienholder. The damages sought to be recovered by the TRUSTEE from each DEFENDANT is the sum of $322,000, which the TRUSTEE alleges is the value, as of September 30, 2010, of the DEBTOR'S equity interest in MIDWEST less the $150,000 received by HEARTLAND.

The TRUSTEE, in Counts I and II of the amended complaint, is advancing a novel theory. Acknowledging that the facts of the transactions involving the assets of MIDWEST do not permit the avoidance of the transfers of MIDWEST'S assets as part of the DEBTOR'S

---

[7]The TRUSTEE'S use of the term "beneficial interest" to describe a shareholder's interest in a corporation or its assets is misplaced. Under Illinois law, "beneficial interest" is a term of art used exclusively to describe a beneficiary's interest in a trust or its assets. "Beneficial interest" is not used in the Illinois Business Corporations Act or by Illinois courts to describe a shareholder's interest. Under Illinois personal property law, the entirety of an owner's interest in personal property is encompassed by the terms "legal" and "equitable" interest. This Court interprets the TRUSTEE'S use of the term "beneficial interest" as wholly redundant with the term "equitable interest."

7

bankruptcy case, the TRUSTEE is recasting his theory of avoidance to match the unusual circumstances presented. The TRUSTEE admits that he is seeking to capture the value of the DEBTOR'S sole ownership interest in MIDWEST that was dissipated by the asset transfers, without being able to avoid the asset transfers themselves.

A major conceptual problem with the amended complaint is the absence of an actual transfer or conveyance of that equity interest by the DEBTOR. The TRUSTEE is attempting to *imply* the transfer of enterprise value from the DEBTOR, as shareholder of MIDWEST, to HOSTETLER, as shareholder of MIDSTATE. The value sought to be captured is the owner's equity interest represented by the shares of stock. But the DEBTOR did not transfer his stock in MIDWEST to HOSTETLER. So the TRUSTEE is left to take the difficult position that because those shares lost value, the negative effect on the DEBTOR'S net worth is the same as if he had transferred his stock, so he (and the other DEFENDANTS) ought to be treated as if he had made an actual transfer under the fraudulent conveyance laws.

This Court agrees with HOSTETLER and MIDSTATE that a transfer of an owner's shares of stock is the sole and exclusive mechanism recognized at law by which a shareholder's interest may be conveyed. The rights of ownership are vested in a shareholder by virtue of the ownership of stock, which confers upon a shareholder certain rights, including the right to participate in the management of the corporation, in its surplus or profits, and upon dissolution, in the distribution of its assets remaining after the payment of its debts. *Olsher v. Olsher*, 78 Ill.App.3d 627, 397 N.E.2d 488 (Ill.App. 1 Dist. 1979). Those rights are not severable and not transferable other than through a stock transfer. In *Fowler v. Shadel,* 400 F.3d 1016 (7th Cir. 2005), the court determined that a sole shareholder's equitable interest in corporate assets

under Wisconsin law, based on his ability to liquidate the corporation and become the owner of the assets, was an interest that necessarily followed the shares of stock. Although *Fowler* was decided under Wisconsin law, the principle recognized by the court is a general one, that all of the rights and interests, legal and equitable, held by a shareholder with respect to the corporation and its assets derive solely from the ownership of shares in the corporation. The court explained that the nature of a shareholder's equitable interest in the property of the corporation is no more than the right, upon liquidation of the corporation and after payment of all corporate debts, to become the legal owner of any remaining corporate assets. 400 F.3d at 1018.

It is apparent from these principles that a shareholder's "equitable interest" exists only because of his ownership of the corporation's stock and, therefore, cannot be transferred absent a conveyance of the stock itself. The TRUSTEE'S novel theory, that a transfer of the DEBTOR'S equitable interest in MIDWEST somehow occurred without a conveyance of its stock, cannot hold water.

The TRUSTEE'S implied transfer theory has never been recognized by any Illinois court under the Illinois Fraudulent Transfer Act. Federal trial courts are not in the business of adopting novel state law theories. *See Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996)(favoring narrow interpretation of undecided issues of liability under state law); *Railway Express Agency, Inc. v. Super Scale Models, Ltd.*, 934 F.2d 135, 138 (7th Cir. 1991)(noting that "recent opinions of this court have strongly encouraged district courts to dismiss actions based on novel state law claims").

Likewise, no federal court has adopted an implied transfer theory for purposes of section 548 of the Bankruptcy Code. In *In re Thurman,* 901 F.2d 839 (10th Cir. 1990), a creditor argued that because the Bankruptcy Code defines "property" to include equitable interests of the debtor, the transfer of an asset of a corporation in which the debtor is a shareholder is a transfer of property in which the debtor held an equitable interest. The Tenth Circuit rejected that theory, reasoning that accepting it would mean that the estate of a debtor who holds a share in a corporation would not only include the value that share would bring, but also a liquidatable interest in any asset owned by the corporation, which asset values are beyond the scope of section 541(a)(1). 901 F.2d at 841. The difficulty with the TRUSTEE'S recharacterized theory is that the DEBTOR did not transfer his shares of stock which embody the value that the TRUSTEE is attempting to recapture.

The TRUSTEE contends that when a fraudulent transfer is merely one step in a general plan, the plan must be viewed as a whole with all its composite parts taken into consideration, and that such a multilevel transaction will be collapsed and treated as a single transaction in order to determine if there was a fraudulent conveyance. Though not identifying it as such, the TRUSTEE relies on the "collapsing doctrine," described by the bankruptcy court in *In re Bachrach Clothing, Inc.*, 480 B.R. 820, 853 (Bankr.N.D.Ill. 2012), as an equitable doctrine allowing a court, in evaluating a fraudulent conveyance, to treat a series of transactions as phases of a single, integrated transaction. The doctrine is most routinely applied in the context of fraudulent transfer actions in failed leveraged buy-outs or other complicated financial transactions which are often structured to occur in several steps. *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 635 (2nd Cir. 1995); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport*

*Servs. Co.*, 910 F.Supp 913, 934 (S.D.N.Y. 1995). The "paradigmatic scheme" under the collapsing doctrine begins with a transfer by the debtor of its property to a transferee in exchange for fair value, followed by a gratuitous transfer by the debtor of the proceeds received in the first exchange to a second transferee, so that the first transferee receives the debtor's property, the second transferee receives the consideration, and the debtor is left empty-handed. *HBE Leasing Corp.* at 635. The TRUSTEE'S reliance on that doctrine, which applies to actual transfers, is misplaced. None of the cases cited by the TRUSTEE involved a transfer of property not owned by the debtor, a surplus estate with no injury or prejudice to the debtor's unsecured creditors, or a situation where there was no transfer of the property interest sought to be avoided. See *In re Joy Recovery Tech. Corp.,* 286 B.R. 54 (N.D.Ill. 2002); *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 202 (3d Cir. 1990); *In re Jumer's Castle Lodge, Inc.,* 338 B.R. 344 (C.D.Ill. 2006).

The amended complaint fails to allege a legally cognizable transfer of the DEBTOR'S legal or equitable interest in MIDWEST for purposes of the fraudulent transfer statutes. The "collapsing doctrine" is not applicable to the facts involved in the case at bar and would not serve to imply a transfer where none existed.

After this Court issued its decision on August 3, 2015, denying the TRUSTEE'S motion to substantively consolidate the cases of MIDWEST and the DEBTOR, and long after the briefing schedule had been completed, the TRUSTEE requested that the Court hear oral argument on the pending motions to dismiss the amended complaint. The Court, instead, gave the TRUSTEE the opportunity to submit a final brief, supplementing his prior submissions. In his Supplemental Memorandum, reiterating a theme that appears in the

amended complaint, the TRUSTEE characterizes the DEBTOR'S conduct as a scheme "to dissipate his assets in order to reduce the amount of property to be divided with his former wife," and as "the fraudulent dissipation of a marital asset, i.e. corporate stock." Whether he intended to or not, by framing the DEBTOR'S conduct in this way, the TRUSTEE opens the door to another difficulty for his theory.

Dissipation of marital or non-marital property is wrongful as to a spouse and gives rise to a particular remedy provided to the spouse in section 503 of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/503(d)(2). The remedy is that the divorce court may consider the effect of the dissipation when dividing the marital property. Unlike in the fraudulent transfer statutes, the statutory remedy in a divorce case for dissipation is not precluded or impeded by the involvement of an artificial entity. The concept of dissipation covers a loss in value to a business conducted through a closely held corporation. *In re Marriage of Thomas,* 239 Ill.App.3d 992, 995, 608 N.E.2d 585 (Ill.App. 3 Dist. 1993). Of course, a spouse's statutory remedy for dissipation is personal to her. If her husband files Chapter 7, his bankruptcy trustee would not have standing to assert a cause of action for dissipation of marital or non-marital assets. *See Koch Refining v. Farmers Union Cent. Exchange, Inc.,* 831 F.2d 1339, 1348-49 (7th Cir. 1987) (trustee has no standing to bring personal claims of creditors).

The TRUSTEE'S theory could be characterized as a hybrid, a cross between a fraudulent transfer avoidance action and a claim for dissipation of marital property. He certainly prefers the strict liability for the value of fraudulently transferred property imposed upon immediate and mediate transferees by the fraudulent conveyance laws. At the same time, he wishes to dispense with the strict requirements that there be an actual transfer and that the property

12

transferred be owned by the DEBTOR, preferring instead the "loss of business value" standard allowed in divorce court. A hybrid claim of that ilk, while creative, is not permissible. Fraudulent transfer avoidance actions are statutory causes of action that are expressly limited to transfers of property in which the debtor has a recognized ownership interest. Courts do not have the discretion to ignore those limitations. Moreover, from the documents filed in this bankruptcy case, it appears that the divorce court provided Diane with her personal remedy by adjusting the distribution of marital property to account for the DEBTOR'S dissipation of marital assets.

For the foregoing reasons, the amended complaint fails to state a claim upon which relief can be granted and will be dismissed. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###